EVANS v. McKAY. (No. 8018.)

(Court of Civil Appeals of Texas. Dallas. April 12, 1919. Rehearing Denied May 31, 1919.)

1. LIBEL AND SLANDER ☞85—LIBEL—PLEADING.

A libel suit being based on language or its equivalent, a complaint should put the court in possession of the libelous matter published, so as to enable court to determine whether words are actionable, and that defendant may be advised concerning exact charges he will be called upon to meet.

2. LIBEL AND SLANDER ☞85—LIBEL—PLEADING—SUFFICIENCY.

Allegation in complaint that defendant published and delivered to plaintiff's employer a statement in writing wherein defendant alleged and stated that she "had an assignment of wages and power of attorney on him, the plaintiff, to the extent of $12, providing for an attorney's fee of $10 additional," sufficiently disclosed a libel under Vernon's Sayles' Ann. Civ. St. 1914, art. 5595; the rule as to pleading being satisfied with any allegation that discloses the very language used, whether purporting to be quoted from the writing or not.

3. MASTER AND SERVANT ☞341—INTERFERENCE WITH RELATION BY THIRD PERSON—PROCURING SERVANT'S DISCHARGE.

Where one knowingly induces a master to break his contract with his servant, the servant has a right of action against the one so causing the breach for any damages resulting.

4. MASTER AND SERVANT ☞341—INTERFERENCE WITH RELATION BY THIRD PERSON—DAMAGES TO SERVANT BY PROCUREMENT OF DISCHARGE.

The fact that an employé's contract is from month to month does not preclude recovery of damages from one who wrongfully procured his discharge.

5. LIBEL AND SLANDER ☞10(6)—LIBEL—NOTICE TO EMPLOYER.

It is not libelous for one who is the owner of the assignment of another's wages to give notice of that fact to the master, but, if at the time notice is given the debt which the assignment secures had been paid, and it is maliciously claimed that it has not, the one giving notice is liable for such damages as proximately result from the unlawful act.

6. LIBEL AND SLANDER ☞81 — PLEADING — MATERIALITY.

In an action against one who had caused the discharge of plaintiff from his employment by falsely and maliciously giving notice to the employer that she had an assignment of plaintiff's wages, allegations that defendant was engaged in conducting a usury business in the name of the M. Co., of which defendant was sole owner, but which defendant, in order to avoid the law and its penalties, falsely claimed was owned by a nonresident, were proper and material where defendant was sought to be held

liable for acts done by the loan company as her agent.

7. LIBEL AND SLANDER ☞88—LIBEL—PLEADING—DAMAGES.

In an action for damages on account of discharge occasioned by defendant falsely and maliciously sending written notice to plaintiff's employer that defendant had an assignment of plaintiff's wages, allegations that defendant was engaged in making short-time wage loans upon which she collected in violation of law from 20 to 30 per cent. interest per month and was assisted in that respect by various agents for whose acts she was responsible, and that one of her means for extorting usurious interest was to notify employers, particularly the employer of plaintiff, that she had an assignment of the wages of the employé, were proper and material as tending to show the degree and deliberateness of the act; the petition containing a prayer for exemplary damages.

8. LIBEL AND SLANDER ☞88 — PLEADING — DAMAGES.

In an action for damages in that plaintiff was discharged from his employment by reason of a notice sent by defendant to his employer falsely claiming he was indebted to defendant, allegations that as a result of such discharge he was exposed to public hatred, contempt, and ridicule, and his reputation for honesty and integrity impaired, and he was for many years prevented from securing other employment, which was of special value to him at that time because of his wife's illness, and that as a result of such libelous statement to his employer and his subsequent discharge and the bringing into question his reputation for honesty and integrity and the fact that he would be confronted with and forced to disclose such facts when seeking employment in the future, he suffered much chagrin, humiliation, distress of mind, mental pain, and agony, were a sufficient basis for the recovery of damages.

9. LIBEL AND SLANDER ☞88, 116—LIBEL—"GENERAL DAMAGES."

In the law of libel, general damages are those which naturally, proximately and necessarily result from publishing the libel, and are recoverable under a general averment; the elements of such damages being injury to character, or reputation, feelings, mental suffering and anguish, and other like wrongs or injuries incapable of money valuation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Damages.]

10. DAMAGES ☞87(1) — "EXEMPLARY DAMAGES."

"Exemplary damages" are awarded as matter of sound public policy in punishment of the guilty one for malicious acts, and not as compensation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exemplary Damages.]

11. DAMAGES ☞91(1)—EXEMPLARY DAMAGES—"MALICIOUS."

In the law relating to exemplary damages, any unlawful act done willfully and purposely

to the injury of another is in a legal sense, as against that person, "malicious."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malicious.]

**12. LIBEL AND SLANDER** ☞5 — LIBEL — IMPLIED MALICE.

In cases founded on libelous publication, the jury may infer the existence of malice from absence of probable cause for making the publication, or from evidence of express malice.

**13. LIBEL AND SLANDER** ☞120(2)—LIBEL— EXEMPLARY DAMAGES—MALICE.

An employé who was discharged from his employment by reason of defendant falsely and maliciously notifying the employer that the employé owed her a debt and that she had an assignment of his wages was properly allowed exemplary damages.

**14. JUDGMENT** ☞744—MATTERS DETERMINED .—PAYMENT OF DEBT BEFORE NOTICE OF ASSIGNMENT.

In an action by an employé discharged from his employment by reason of a false and malicious notice by defendant to his employer that plaintiff owed defendant a debt and that she had an assignment of plaintiff's wages, a judgment, in a prior action by the plaintiff against the employer and defendant for his wages and to cancel the assignment of wages, adjudging that the debt had been paid before notice of the assignment to the employer was given, was admissible in evidence to prove such fact.

**15. JUDGMENT** ☞744—RES JUDICATA—ISSUES DETERMINED—PAYMENT OF DEBT.

A judgment in an action by plaintiff against a railroad and defendant to recover wages and to cancel an assignment of the wages to the individual defendant, adjudging that the debt to defendant had been paid prior to notice to the railroad of the assignment of the wages, was res judicata in an action by plaintiff against defendant for damages on account of his discharge from employment, occasioned by defendant falsely and maliciously notifying the railroad that plaintiff owed defendant a debt, and that defendant had an assignment of plaintiff's wages.

**16. JUDGMENT** ☞713(1)—NATURE OF—"RES JUDICATA."

Res judicata is but the assertion in a pending suit that some legal or equitable issue there presented has been decided by some other court of competent jurisdiction and is as a consequence a bar to again litigate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Res Adjudicata.]

**17. JUDGMENT** ☞540—RES JUDICATA—IDENTITY OF PARTIES AND CAUSES.

In order for a second suit upon the same cause of action to be barred under the doctrine of res judicata, there must be identity in the thing sued for in the cause of action, in the persons and parties, and in the quality in the persons for or against whom the claim is made.

**18. JUDGMENT** ☞584, 634—RES JUDICATA— SAME AND DIFFERENT CAUSES OF ACTION.

There is a difference between the effect of a judgment as a bar against the prosecution of a second suit on the same claim or demand and its effect as a bar in another action between the same parties upon a different claim or demand; as in the former case the judgment constitutes an absolute bar to a subsequent action, while in an action between the same parties upon a different claim or demand the judgment in the former action operates only as an estoppel as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered.

**19. JUDGMENT** ☞486(1) — COLLATERAL ATTACK.

A void judgment may be collaterally attacked.

**20. JUDGMENT** ☞576(1) — ERRONEOUS JUDGMENTS—RES JUDICATA.

An erroneous judgment is not void, and, unless appealed from, remains in force, and any error or irregularity therein does not lessen its effect as a bar to further suits upon the same cause of action.

**21. JUDGMENT** ☞501—COLLATERAL ATTACK— ERRORS.

Where a court of general jurisdiction, in the exercise of its ordinary judicial function, renders a judgment in a cause in which it has jurisdiction over the person of the defendant and the subject-matter of the controversy, such judgment is never void, no matter how erroneous it may appear to be from the face of the record or otherwise.

**22. JUDGMENT** ☞731—MATTER ADJUDICATED —PRESUMPTION.

Where the pleadings upon which trial was had put in issue plaintiff's right to recover upon two causes of action, and judgment awarded him a recovery upon one and was silent as to the other, such judgment is prima facie an adjudication that he was not entitled to recover upon such other cause of action.

**23. JUDGMENT** ☞741—CONCLUSIVENESS—INFERENCES.

In action to recover usurious interest paid and exacted and to cancel an assignment of wages on the ground that the debt had been paid, a judgment only canceling the assignment was prima facie an adjudication that plaintiff was not entitled to recover the alleged usurious interest.

**24. JUDGMENT** ☞725(6) — RES JUDICATA — MATTERS NECESSARILY DECIDED.

In an action against plaintiff's employer and defendant for wages and cancellation of an assignment of wages to defendant, it being alleged that the debt to defendant was paid prior to notice to the employer of the assignment, a judgment for plaintiff for wages and a cancellation of the assignment necessarily included a finding that the debt had been paid to defendant and the assignment canceled prior to the date notice was given the employer, and the judgment was admissible in another action by plaintiff against the defendant to show such fact.

**25. PRINCIPAL AND AGENT** ☞163(1)—"RATIFICATION."

"Ratification" is the election by one to accept an act or contract previously done or en-

tered into in his behalf by another who had at the time no authority to do the act or make the contract in his behalf.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ratification.]

**26. PRINCIPAL AND AGENT ⟐169(2)—RATIFICATION.**

Where one sued his employer for wages, and employer set up defense that wages had been assigned to defendant, and defendant, who was also sued for alleged usurious interest and to cancel the assignment, appeared and filed the assignment, she thereby ratified the unauthorized act of another in giving notice of such assignment to the employer, and was bound thereby in an action by plaintiff for damages for discharge from employment by reason of such notice of assignment.

**27. PRINCIPAL AND AGENT ⟐175(1)—RATIFICATION—EFFECT.**

Where one ratifies the unauthorized act of another in his behalf, the legal consequences of the act follow as a matter of course.

**28. EVIDENCE ⟐121(2)—RES GESTÆ.**

In an action by an employé for damages for discharge occasioned by defendant falsely and maliciously notifying the employer that plaintiff owed her a debt, and that she had an assignment of his wages, plaintiff could testify that the employer's agents notified him at the time of his discharge that he was discharged because a loan company had given notice that it held an assignment of his wages, being a part of the res gestæ incidental to and explanatory of plaintiff's claim that the railroad company discharged him because of the giving of the false notice.

**29. EVIDENCE ⟐118—RES GESTÆ.**

The tendency of the courts is to extend rather than narrow the scope of the rule admitting otherwise hearsay matter as res gestæ.

**30. APPEAL AND ERROR ⟐1060(1)—HARMLESS ERROR—MISCONDUCT OF COUNSEL.**

Impertinent remarks of counsel will not be held reversible error, although it prejudices the jury and increases the verdict, where no complaint was made as to the size of the verdict, and liability was established by other testimony.

**31. TRIAL ⟐352(1)—SPECIAL ISSUES—INVADING PROVINCE OF JURY.**

The submission of a special issue inquiring of the jury whether one C. filed notice with plaintiff's employer claiming that defendant had an assignment of plaintiff's wages was not erroneous as depriving defendant of the right to have the jury decide whether C. was the authorized agent of defendant, as it did not prevent defendant from requesting the court to submit the question of C.'s agency.

**32. APPEAL AND ERROR ⟐1062(1) — HARMLESS ERROR—SUBMISSION OF ISSUES.**

In an action for damages based on wrongful acts of defendant's alleged agent, submission of issue which deprived defendant of the right to have the jury decide whether such other person was the authorized agent of defendant was harmless and immaterial, where it was established that defendant ratified and adopted such third person's wrongful act.

**33. TRIAL ⟐352(5) — SPECIAL ISSUE — EMBRACING MORE THAN ONE PROPOSITION.**

Financial injury and mental suffering are both elements of actual damages, the first being classified as special and the second as general damages, and hence a special issue inquiring of the jury whether plaintiff sustained "any financial injury or mental suffering" was not erroneous on ground that financial injury and mental suffering were distinct elements of damages and should have been separately submitted.

**34. LIBEL AND SLANDER ⟐4, 5 — LIBEL — "MALICE IN LAW"—"MALICE IN FACT."**

In actions for libel, there are two kinds of malice, "malice in law" and "malice in fact," or "express malice," malice in law arising in cases where the words uttered are presumed in law to be malicious.

[Ed. Note.—For other definitions, see Words and Phrases, Malice in Fact; Malice in Law.]

**35. LIBEL AND SLANDER ⟐4—LIBEL—EXPRESS MALICE.**

Where words uttered are not actionable per se or presumptively libelous, it becomes necessary to prove express malice or that the alleged libelous matter was published in reckless disregard of plaintiff's rights and in a spirit of indifference concerning the injury which it might inflict.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by R. L. McKay against E. Evans. Judgment for plaintiff, and defendant appeals. Affirmed.

W. L. Crawford, Bern Wilson, and Ellis P. House, all of Dallas, for appellant.

Geo. Clifton Edwards and Carden, Starling, Carden, Hemphill & Wallace, all of Dallas, for appellee.

RASBURY, J. Appellee sued appellant, alleging that she was engaged in lending money at usurious and oppressive rates of interest in the name of the Model Loan Company, which she pretended was owned by another, to recover actual and exemplary damages charged to have been the result of appellee's discharge from the service of the Houston & Texas Central Railroad Company through the wrongful, fraudulent, and malicious conduct of appellant and her agents. Appellee, as basis for his suit, alleged that, while appellee was employed by said railroad company, and while said company had in force a rule that any employé who assigned his salary would at once be discharged from its service, appellant, with knowledge thereof, wrongfully, willfully, maliciously, in wanton disregard of appellee's rights, and for the purpose of effecting his discharge, notified the railroad company in writing that she held an assignment of appellee's salary, coupled with power

of attorney to collect same, and falsely claimed that appellee was indebted to her in the sum of $22, in consequence of which he was discharged from the service of the railroad company and the wage then due him withheld. Appellant, after many exceptions, on some of which the action of the court is to be considered in this opinion on the merits, denied ownership of Model Loan Company, alleging that she was merely an employé of that concern, but that appellee did owe her $22 and did execute and deliver to her in security thereof an assignment of his salary, coupled with power of attorney to collect, but that she never gave the notice of that fact to the railroad company or authorized it or ratified the act of any person in so doing, either in her name or in the name of the Model Loan Company, and was guilty of no act tending to injure appellee. There was trial to jury, to whom the issues of fact were referred for special verdict in form of the usual interrogatories, upon the answers to which judgment was awarded appellee for $1,400 actual, and $2,800 exemplary damages. From that judgment this appeal is prosecuted.

We make no general statement of the pleading and the facts for the reason that to do so would result, as to the pleading, in unnecessary duplication, since there are numerous assignments, often repeated, attacking the pleading which must be considered, and, as to the facts, for the reason that the sufficiency of the evidence as a whole to sustain the verdict is not challenged, though as to certain issues that claim is made, in which cases we will review the evidence to the extent required. Counsel on each side of the controversy frankly admit that the issues are simple and few, one of them declaring that the real issues are but four, yet counsel for appellant present 57 assignments of error, many of them repetitions, in a printed brief of 196 pages, which are met seriatim by as many counter propositions by counsel for appellee in a printed brief of 141 pages. To follow the manner of presenting the case in the briefs would extend this opinion to a length beyond toleration, which as a consequence makes it necessary for us to segregate the issues as such from the assignments and perform the work imposed by the rules upon counsel.

[1, 2] Appellant first assigns as error the action of the court in overruling her general demurrer; the precise point being that the petition was insufficient because it did not set out in hæc verba the writing alleged to contain the false claim that appellee was indebted to appellant. The allegation was that appellant "wrote, published, and caused to be delivered to Houston & Texas Central Railway Company * * * a statement in writing, wherein the defendant * * * alleged and stated that the defendant had an assignment of wages and power of attorney

on him, the plaintiff, to the extent of $12, providing for an attorney's fee of $10 additional." By appropriate allegations the innuendo intended by the notice was shown, that it was done maliciously, and the claim made that appellee was not indebted to appellant in any sum, but as result of the notice he was discharged, etc. The allegations quoted disclose within the meaning of the statute a libel. Article 5595, Vernon's Sayles' Civil Statutes. As a consequence the rules for pleading libel are to determine the sufficiency of the allegations quoted. While the common-law distinctions and technicalities do not obtain in our practice, clear and sufficient allegations of the facts constituting the cause or defense is required, and what is required depends in a large measure upon the character of the suit. "A libel suit is based on language or its equivalent. The complaint * * * should put the court in possession of the libelous matter published, the language used, * * * so as to enable the court to determine whether the words are actionable." Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768. The reason for the rule which requires the language used to be set out is that the court may determine whether its use imposes liability and that the defendant may be advised concerning the exact charges he will be called upon to meet. 17 R. C. L. 390. The question then is: Did the allegations quoted comply with the rules? We think they did. It is alleged that appellant wrote, published, and delivered to appellee's employer a statement in writing wherein the defendant alleged and stated that she "had an assignment of wages and power of attorney on him, the plaintiff, to the extent of $12, providing for an attorney's fee of $10 additional." The allegations do not purport in the least to give the substance and meaning of the language written and published. On the contrary, it is charged directly and specifically that appellant wrote and delivered to appellee's employer the exact and precise statement set out in the pleading. It is our opinion that the rule is satisfied with any allegation that discloses the very language used, whether purporting to be quoted from the writing or not. The identical words alleged to have been published were set out. The court thereby was enabled to determine whether they in law imposed liability, and the defendant informed what he would be required to meet. Proof of other or different language would, of course, have been excluded upon objection.

[3, 4] Error is next assigned upon the action of the court in overruling one of appellant's special exceptions, the effect of which is to challenge the sufficiency of that portion of appellee's petition which alleges that at the time he was discharged as result of the false and libelous publication uttered by appellant he was earning $45 per month, with

reasonable prospect of promotion as he increased in knowledge and efficiency and consequent enhanced earnings, as basis of recovery, for the reason that no definite or permanent term of employment was alleged or any probability of a continuance of the indefinite employment.

It is a general principle of law that, if one "knowingly induces another to break his contract with a third person, such third person has a right of action against the one so causing the breach for any damages resulting to him by such breach." Raymond v. Yarington, 96 Tex. 443, 73 S. W. 801, 62 L. R. A. 962, 97 Am. St. Rep. 914. The duration of the term of the contract thus violated or its permanency or impermanency does not, in our opinion, affect the right to recover whatever damages may have resulted. The duration of the contract might and probably would be a proper subject for consideration by the jury in determining the amount of the damages probably or proximately arising from its breach. That it would not, merely because it was from month to month, preclude recovery for what could be shown to have resulted, we think clear.

[5] Appellant specially excepted to appellee's allegations setting forth the giving of the notice that appellant held an assignment of appellee's wages, on the ground, in effect, that an assignment of wages was lawful, and hence it was not libelous to give notice of its possession and ownership. The exception was overruled, and the court's action in that respect assigned as error. It is not, in our opinion, libelous for one who is the owner of an assignment of another's wage to give notice of that fact to the proper person. Giving such notice would but be the exercise of a contract right, and would confer no right to recover damages, whatever might result. If, however, at the time notice is given the debt which the assignment secures has been paid, yet it be falsely claimed that it has not, the one giving such notice is liable for such damages as proximately result from the unlawful act. The liability in such cases is not determined by the original bona fides of the assignment, but by the subsequent false claim.

[6] Assignments 6, 7, 8, and 9 are grouped. These assignments challenge the action of the court in overruling as many special exceptions directed against certain allegations in appellee's petition asserted to be immaterial and prejudicial. The allegations complained of are essentially different in relation and purpose. The substance of those first presented is that appellant was engaged in conducting a usury business in the name of the Model Loan Company, of which appellant was sole owner, but which appellant, in order to avoid the law and its penalties, falsely claimed was owned by a nonresident of Texas, because of which it was alleged that she was personally liable on several recited grounds for her acts alleged to have been done as agent. Obviously such allegations were material, since, if appellant was owner of and conducting the Model Loan Company, she would be personally liable for any actionable wrong done in its name or by its agents. The allegations raised at most a material issue of fact.

[7] The substance of the allegations presented secondly under the several assignments enumerated is the charge that appellant was engaged in making short-time wage loans upon which she collected, in violation of law, 20 to 30 per cent. interest per month, and was assisted in that respect by various agents for whose acts she was responsible, and that one of her means for extorting usurious interest was to notify employers, particularly the employer of appellee, that she had an assignment of the wages of the employé, and that appellant did, with knowledge of the rule of appellee's employer, maliciously and in order to secure appellee's discharge, give such notice falsely claiming an indebtedness against appellee. The proposition advanced is that, even if it be true that appellant was engaged in an unlawful business, the fact was wholly immaterial in the present suit, and had the effect of prejudicing the minds of the jurors.

We conclude that the facts alleged were admissible in evidence as tending to prove the issue of malice. If, as alleged, appellant did, because of appellee's refusal to pay the unlawful rate of interest, give the notice in order to secure his discharge, it can hardly be denied that it disclosed a malicious purpose. If it was a common practice of appellant to extort usury in such manner, that fact tended to prove the degree and deliberateness of the act. Appellee could rely upon the false publication and the circumstances of its publication to establish malice; yet he was also entitled to show it by extrinsic evidence. Showing malice in a given case is more or less reflecting the mind of the one charged therewith. "It is very difficult to say what possible evidence is inadmissible on this issue." Newell, S. & L. § 414. The relation of the parties, the circumstances surrounding the transaction which culminated in the publication, often indicate, in a manner that the publication cannot, whether malice existed. The common practice of collecting unlawful interest by securing the discharge of one on a false claim of indebtedness tends more strongly to establish malice than would a single similar act, it occurs to us.

[8, 9] Assignment 11 also complains of the action of the court in overruling one of appellant's special exceptions. Appellee, after reciting that the notice falsely claiming he was indebted to appellant was given to his employer, and as result thereof he

was discharged, exposed to public hatred, contempt, and ridicule, and his reputation for honesty and integrity impaired, and whereby he was for many months prevented from securing other employment, which was of special value to him at that time because of his wife's illness, averred that as result of said libelous statement to his employer and his subsequent discharge and the bringing into question his reputation for honesty and integrity and the fact that he would be confronted with and forced to disclose such facts when seeking employment in the future, he suffered great chagrin, humiliation, distress of mind, mental pain, and agony, all to his damage in the amount of $5,000. The contention is that the allegations cannot form the basis of recovery, because they do not disclose any specific damages resulting from the acts complained of and are remote and speculative. In our opinion, the allegations are a sufficient basis for the recovery of damages. Broadly speaking, there are two classes of damages recoverable in libel cases, general and special. General damages are those which naturally, proximately, and necessarily result from publishing the libel. The law infers them. They are recoverable under general averment. The elements of general damages in such cases are injury to character or reputation, feelings, mental suffering, or anguish and other like wrongs or injuries incapable of money valuation. 17 R. C. L. 429. They are neither remote nor speculative. While incapable of precise measurement by money standards, the injury, when inflicted, is more serious than those which can be accurately measured by such values. The allegations asserted that appellant published that of appellee which is denounced by the statute as libelous, which tended to injure his reputation and thereby expose him to public hatred, contempt, and ridicule, and to impeach his honesty and integrity, as result of which he was chagrined, humiliated, and suffered great distress of mind, mental pain, and anguish. That such emotions would naturally, proximately, and necessarily result under the circumstances, we think, is hardly to be denied.

[10-13] The contention is also made that the court erred in overruling one of appellant's special exceptions which asserted in substance that the facts alleged in the petition were insufficient to warrant a finding for exemplary damages. Exemplary damages are awarded as matter of sound public policy in punishment of the guilty one for malicious acts, and not as compensation. The amount awarded goes to the complaining party merely because assessed in his suit. "In a legal sense, any unlawful act done willfully and purposely to the injury of another is, as against that person, malicious." Culbertson v. Cabeen, 29 Tex. 247. In cases

founded on libelous publication the jury "may infer the existence of malice from absence of probable cause for making the publication, or upon evidence of express malice." Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819. On such issue appellee alleged, in substance, that the statement that he was indebted to appellant in the sum of $22, and that that amount was secured by an assignment of appellee's wages, was false and known by appellant to be false at the time, and that the notice was published and given with the deliberate and willful intention of effecting appellee's discharge because of his refusal to pay a debt he did not owe. It seems to us that the allegation that appellant falsely claimed that appellee owed a debt already discharged and the further allegations that the notice was given in the light of such knowledge is sufficient in the first instance for the jury to infer malice on the ground that the publication was without probable cause, and that the allegations that the notice was deliberately published for the purpose of securing appellee's discharge because of his refusal to again pay the debt is sufficient in the second instance for the jury to find express malice. In short, the allegations disclosed facts sufficient to present both issues to the jury, and for that reason the exception was properly overruled.

Assignments 22 to 26, inclusive, are grouped, and relate to the action of the court in admitting in evidence the pleadings of the respective parties and the judgment of the justice of the peace of precinct No. 1, Dallas county, in case of R. L. McKay v. Houston & Texas Cent. R. Co. and E. Evans. The propositions presented by appellant and presently to be considered can best be understood by a statement of the pleading and judgment so admitted in evidence as disclosed by the statement of facts. After appellee was discharged by the Houston & Texas Central Railroad Company, it refused to pay the wages then due him, whereupon appellee sued it and E. Evans in justice court, alleging, in substance, as to the railroad company, that it owed him wages in sum of $35, which amount he sued to recover, together with statutory attorney's fee of $20, because of its refusal to pay his wages for a period of 30 days, and, as to E. Evans, that she, as owner of a usury business operated under the name of the Model Loan Company, claimed his wage under an assignment thereof which was fraudulent and void because the loan it secured had long since been paid, for which reason he prayed that the assignment be canceled and held for naught, and by supplemental pleading alleged as to E. Evans that he did not execute the instrument dated 1912, but that about May, 1911, he borrowed $10 from Evans, which was all he borrowed from her, and that he repaid said sum and $8 additional as usury, for double the amount

of which he sought judgment. The railroad company admitted the indebtedness to McKay, but averred that its codefendant, E. Evans, purporting to do business as the Model Loan Company, had an assignment of the wage due or to become due McKay by it to secure payment of an indebtedness due her by McKay amounting to $22, and that it did not know to whom to pay the money. The railroad company tendered the sum due into court and asked that it be protected by appropriate judgment. The record does not contain any written pleading by E. Evans. The transcript of the justice's docket does, however, contain the notation that "defendant Evans filed answer." There was also filed as part of the record in the justice court an instrument dated "February 29/12," consisting of two parts both signed by McKay. By the terms of the initial portion of the instrument McKay assigned to E. Evans all his wage, etc., due or to become due from the Continental Gin Company for February, March, April, May, June, and each month thereafter. To enable E. Evans to collect the wage so assigned it was recited that McKay had signed a blank assignment and power of attorney in which Evans was authorized to insert the name of McKay's then employer or any future employer and the day, month, or year in which the wage was earned, and to authorize another to do all she could do by the terms of the instruments. The second part of the instrument was an assignment by McKay to Evans of all the wage due or to become due him by the Houston & Texas Central Railroad Company during November, 1914, and each month thereafter until $12, all costs incurred, and an attorney's fee of $10 had been paid. For such purpose Evans was appointed the attorney in fact of McKay with wide authority in that respect. The second portion, while dated November 13, 1914, is obviously the blank referred to in the first portion authorizing Evans to fill in all dates of whatever character. Whether the instrument was filed with the justice as evidence or as the basis of appellant's claim in that suit does not appear. There was trial to jury, whose verdict was for McKay against the railroad company for $35.92, and "for cancellation of the power of attorney of the Model Loan Company," followed by judgment which recited, in substance, that McKay and Evans appeared in person and by attorney and the railroad company by attorney, and, jury having been demanded and having returned the verdict recited above, it was adjudged and decreed by the court that McKay should recover of the railroad company $35.92, and that the "instrument in writing filed herein by Miss E. Evans and called the power of attorney and assignment, and all claims based on it against plaintiff, be and hereby are canceled and held void and of no effect."

No appeal from the justice's judgment was prosecuted.

[14] The first complaint relates to the admission in evidence of the judgment. Obviously the purpose sought by the introduction of the judgment was to prove that it had been adjudged by the justice court that the debt which appellant claimed against appellee had been paid and the assignment of appellee's wage and the power to collect same canceled at the time the notice was given the railroad company. In our opinion the judgment was admissible for that purpose. If, in the trial in the justice court, it was adjudged that the debt had been paid before the notice to the railroad company was given, the record and judgment would be the best evidence of that fact. In fact, it occurs to us, if the pleading and the judgment in the justice court disclosed with reasonable certainty that such was the issue and judgment in that court, it would be conclusive in the absence of an appeal from or some character of direct attack upon the judgment.

[15-18] While counsel for appellant do not precisely deny the admissibility and force of such a judgment for the purpose indicated, they do argue, in effect, that the justice's judgment was improperly admitted in evidence for the reason that the judgment was not res judicata of that issue under the rule in such cases. Precisely speaking the judgment was not offered in bar or estoppel of any right of appellant to meet the issues in the damage suit. It was offered to prove one of the facts necessary to entitle appellee to recover. If, however, the admissibility of the judgment for that purpose did depend upon whether it was res judicata of the issue sought to be proved, we yet are of opinion that it comes within the rule. Res judicata is but the assertion in a pending suit that some legal or equitable issue there presented has been decided by some other court of competent jurisdiction and is as a consequence a bar to the right to again litigate it. The rule has variations. In case of a second suit upon the same cause of action the rule is that there must be identity in the thing sued for, in the cause of action, in the persons and parties, and in the quality in the persons for or against whom the claim is made. There is, however, a difference between the effect of a judgment as a bar against the prosecution of a second suit on the same claim or demand and its effect as a bar in another action between the same parties upon a different claim or demand. "In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the

determination of which the finding or verdict was rendered." Cromwell v. County of Sac, 94 U. S. 352, 24 L. Ed. 195. From which it follows that in a suit between the same parties, but not upon the same claim or demand, any issue controverted and adjudged in the former suit is a bar to the right to litigate that issue in the subsequent suit. Stated in another way: "Where it appears from the record of a court * * * that an issue has been presented and decided, then the decision so made, so long as it is not set aside in some lawful manner, must be held conclusive upon the rights of the parties when the same issue is again presented. * * *" Freeman v. McAninch, 87 Tex. 132, 27 S. W. 97, 47 Am. St. Rep. 79. The application of the rule stated in the present controversy is that as between the parties any issue determined in the justice court barred either from again litigating it in this proceeding, and the judgment was admissible for that purpose, regardless of the fact that the cause of action in the former suit is different from that in the case at bar.

[19-21] It is also urged that the judgment was inadmissible for the purpose offered because not responsive to the verdict of the jury. The precise point is that the verdict did not dispose of: (1) Appellee's claim for attorney's fees against the railroad company; (2) appellee's claim against appellant for $16 alleged usury penalty; (3) appellant's alleged debt and attorney's fees against appellee. As shown by our statement of the pleadings of the respective parties, appellee did seek to recover of the railroad company the statutory attorney's fee for withholding his wage and to recover of appellant $16, being double the amount of usurious interest exacted by appellant, and it can be assumed that appellant sought to recover the debt she claimed against appellee set out in the pleading of the railroad company, though there is no pleading on file to that effect. We have also recited that the verdict of the jury was that appellee recover against the railroad company $35.92, the amount of his wage, and that the power of attorney of the Model Loan Company be canceled. The judgment was that appellee recover of the railroad company $35.92, and that the power of attorney and assignment filed in the case by appellant and all claims based thereon against appellee be canceled and held for naught. The complaints recited are but collateral attacks upon the judgment. As in case of other collateral attacks, if the judgment is void, it would not constitute a bar to the right to again litigate the issue sought to be proved by the judgment. Erroneous judgments are not void, however, and unless appealed from, they remain in force, and any error or irregularity therein does not lessen "its effect as a bar to further suits upon the same cause of action." 23 Cyc. 1124, 1125. "Where a

court of general jurisdiction, in the exercise of its ordinary judicial function, renders a judgment, in a cause in which it has jurisdiction over the person of the defendant and the subject-matter of the controversy, such judgment is never void, no matter how erroneous it may appear, from the face of the records or otherwise, to be." Clayton v. Hurt, 88 Tex. 595, 32 S. W. 876; Rankin v. Hooks, 81 S. W. 1005. The record from the justice court which we have recited discloses jurisdiction of both the parties and the subject-matter. We conclude, therefore, that the issue so presented is without merit.

[22, 23] On the other hand, if the objection raised as to the admissibility of the judgment is not a collateral attack thereon, we are nevertheless of the opinion that it is without merit, for the reason that all the matters recited were in issue by the pleading and concluded by the verdict and judgment. Where "the pleadings upon which the trial was had put in issue plaintiff's right to recover upon two causes of action, and the judgment [or verdict] awards him a recovery upon one, but is silent as to the other, such judgment [or verdict] is prima facie an adjudication that he was not entitled to recover upon such other cause." Rackley v. Fowlkes, 89 Tex. 613, 36 S. W. 77; Trammell v. Rosen, 106 Tex. 132, 157 S. W. 1161. As a consequence the failure to award appellee in the justice court judgment either for the attorney's fee against the railroad company or the usury penalty against appellant was prima facie an adjudication that he was not entitled to either. In like manner the verdict of the jury canceling the assignment and power of attorney upon which appellant based its claim against appellee for $22 was prima facie an adjudication that appellee was not entitled to recover same.

[24] It is also urged that the judgment was inadmissible for the purpose for which it was introduced for the reason that it does not appear therefrom that the debt had been paid and the assignment canceled prior to the date the notice was given to appellee's employer. As we have shown, it was alleged that the notice was given to appellee's employer November 13, 1914. Appellant answered first in justice court, according to notation on the docket January 11, 1915. On February, 10, 1915, she filed in court the assignment and power of attorney under which she claimed the money due appellee by the railroad company. On the same day appellee filed in the justice court sworn supplemental petition alleging, among other things, that he did not execute the instrument filed by appellant, and that all the money he ever borrowed from appellant was in May, 1911, which had been repaid with usurious interest at a date long prior to the giving of said notice. It is thus seen that the issue of the validity of the very assignment relied upon

by appellant as well as the time when it was satisfied was in issue in the justice court, and that the pleading places the date of its satisfaction at a time prior to the date of giving the alleged false notice to the appellee's employer, and the judgment is as conclusive on that issue as any other issue in the case.

Complaint is made of the action of the court in instructing the jury upon conclusion of the evidence that the justice's judgment conclusively established the falsity of appellant's claim that she had an assignment of appellee's wage coupled with power of attorney at the time the notice was given the railroad company. We have already indicated that it is our opinion that the pleading of both parties in the justice court put in issue the only assignment ever executed or claimed to have been executed by appellee, and that the pleading of appellee placed in issue the claim that he had paid appellant the only debt he owed long prior to the time the notice was given to the railroad company, and that the verdict of the jury and the judgment of the court, being for appellee, foreclosed that issue against appellant. That being true, there was nothing to submit to the jury and the court's charge was correct.

[25-27] The evidence upon trial in the district court disclosed that the notice to the railroad company claiming that appellant had an assignment of appellee's wages was given by one Crump. Whether he was authorized to do so by appellant was a controverted issue. At the conclusion of the trial the court instructed the jury in substance that the giving of the notice by Crump "tied up" appellee's wages, and that appellant in seeking to obtain the benefit of such act ratified same. The action of the court in that respect is assigned as error. A composite definition of ratification as relates to the law of agency is said to be "the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent in doing the act or making the contract without authority to do so." 2 C. J. 467. It is the election by one "to accept an act or contract previously done or entered into in his behalf by another who had at the time no authority to do the act or make the contract on his behalf." Gallup v. Liberty County, 57 Tex. Civ. App. 175, 186, 122 S. W. 291, 296. The inquiry then is: Did appellant, the question of Crump's agency being an issuable fact, adopt and seek the benefit of his unauthorized act in such manner as to render her responsible for the legal consequences resulting therefrom? We conclude she uld. The act purported to be done for appellant by Crump was giving notice to the railroad company that appellant had an assignment of appellee's wages and authority to demand and receive the same and the consequent impounding of the money. There was no pleading in the justice court by which appellant either affirmed or denied Crump's agency or admitted or denied his authority to give the notice. Appellee and the railroad company did in that court plead that she claimed to be entitled to the wage by assignment, and appellant did file in that court a purported assignment by appellee of the wage due him by the railroad company and that issue was determined by the jury. Thus it results that, with knowledge of the fact that Crump without her authority had given the notice, claiming the fund as hers, impounded or "tied up" same, she not only did not repudiate his act, but sought to have established the truth of the claim and have the fund so impounded adjudged to her. Such, we believe, was both adoption of the unauthorized act and seeking the benefits thereof. The legal consequences of the act follow as matter of course.

[28, 29] There are a number of assignments complaining of the action of the court in permitting appellee to testify to certain declarations of the agents of the railroad company. This testimony generally was that the railroad company's agent notified appellee that he would not be retained in its employ because a loan company had given notice that it held an assignment of appellee's wages, appellee's claim and offer to show the agent the debt had been paid, and the agent's declaration that it would be useless for the reason that the company refused to retain any employé in such cases. The testimony, in our opinion, was admissible as part of the res gestæ, since it was incidental to and explanatory of appellee's claim that the railroad company discharged him as result of the giving of the false notice. We shall not, of course, attempt to discuss even in a general way the many reasons why testimony ordinarily hearsay and irrelevant is in certain cases admissible as part of the res gestæ. The propriety and justification for it is at least well settled, while the tendency of the cases is to extend rather than narrow its scope. 10 R. C. L. 974. The authority cited declares, in substance, that res gestæ are acts and words so closely connected with and incidental to and explanatory of the main fact that without them it could not be understood, are the events themselves related by "the instructive words and acts of the participants, * * *" and serve to illustrate the matter under investigation.

[30] Error is assigned upon the refusal of the court to instruct the jury not to consider certain questions and remarks of counsel addressed to the witnesses for appellant. These questions were addressed to witnesses who were engaged in or connected with others

engaged in doing what was asserted to be a usury business, and in examining the witnesses counsel would inquire of them if they were not engaged in the "loan shark" business, and in one instance intimated that one of the witnesses, because engaged in such business, had not earned an honest dollar since that time. We have examined the bills of exception. The answers to many of the questions are not set out; merely the question. The bills omit to show by some sort of explanatory preface what had preceded so as to disclose the relation of the question to what preceded, or, if not that, to show its lack of relation and consequent impertinency. At the same time we do not approve such methods of cross-examination. Yet liability was established by other testimony, and did not depend upon whether the witnesses were engaged in or connected with the "loan shark" business. If it biased or prejudiced the jury, the only result would be to increase the verdict. No complaint is made in that respect. So, while we cannot approve the innuendoes and obvious imputations, the record does not, in our opinion, disclose ground sufficient to warrant a reversal.

[31, 32] By special issue the court inquired of the jury whether one Crump filed notice with the jury claiming that appellant had an assignment of appellee's wages. Complaint is made of the court's action in that respect on the ground that it deprived appellant of the right to have the jury to decide whether Crump was the authorized agent of appellant in that matter. While we do not think the special issue prevented the court from submitting or appellant from requesting the court to submit the question of Crump's agency, at the same time the question of agency under the trial court's holding, in which we concur, that appellant adopted and ratified Crump's act in giving the notice, became and is immaterial.

[33] Among other issues submitted to the jury was one inquiring of them whether appellee sustained "any financial injury or mental suffering" as a result of giving the false notice. It was complained at the time and is here renewed that the manner of submitting the issue was erroneous for the reason that financial injury and mental suffering are distinct elements of damages, and for that reason should have been separately submitted. Financial injury and mental suffering are both elements of actual damages, the first being classified as special, and the second as general, damages, as we have pointed out at another place in this opinion. It thus results that the special issue is but a general inquiry as to the extent of the actual damages suffered by appellee, and not as a consequence subject to the criticism that it requires but one answer to issues susceptible of separate and adverse findings.

212 S.W.—44

[34, 35] The appellee alleged and the jury in answer to appropriate special issue found that in giving the notice to appellee's employer appellant did so in reckless disregard of appellee's rights and in a spirit of indifference concerning the injury it might inflict and as exemplary damages for doing so awarded appellee $2,800. By several assignments appellant asserts, in effect, that the evidence adduced will not support such a finding. "In actions for libel there are two kinds of malice; malice in law and malice in fact, or express malice." 17 R. C. L. 322. Malice in law arises in cases where the words uttered are presumed in law to be malicious. Such words being actionable per se dispenses with further proof of malice. The words uttered not being actionable per se or presumptively libelous, it becomes necessary to prove express malice in the ordinary way or as found by the jury that the notice was published in reckless disregard of appellee's rights and in a spirit of indifference concerning the injury it might inflict. The facts relied upon by the lower court in submitting the issue of malice in fact or express malice as ground for allowance of exemplary damages are that the appellant, knowing her debt had been paid and knowing that appellee's employer's custom was to discharge employés who assigned their wages, gave notice to appellee's employer that she in fact held an assignment of appellee's wages for an unpaid debt due her, coupled with power of attorney authorizing her to demand and receive same. The claim was false, and as result of the notice appellee was discharged. In Cotton v. Cooper, 160 S. W. 597, similar facts were held sufficient to warrant a verdict awarding exemplary damages. Id., 209 S. W. 135.

There are a great number of assignments submitted as propositions, and then grouped, and under which, as grouped, general propositions are advanced. In nearly every case the assignments are not propositions within themselves, and are improperly grouped, for the reason that they raise and present totally different issues. While we have not considered each assignment separately, we have waived the rules as the speediest way out of the matter and considered the general propositions save where they repeat. While we have considered, we have not written upon, a large number of others, for the reason that to do so would extend this opinion beyond all reasonable proportions. A number of such issues are the admission of testimony. While in several instances we think the testimony was improper, we have reached the conclusion that its admission was not such error as was reasonably calculated to or probably did cause the rendition of an improper judgment in the case.

The judgment is affirmed.