Hon. MILO L. BENNETT,
Hon. LUKE P. POLAND,
Hon. ASA O. ALDIS, } Assistant Judges.
Hon. JOHN PIERPOINT,
Hon. JAMES BARRETT,

---

JEROME J. HILL *v.* THE WESTERN VERMONT RAILROAD COMPANY, AND MYRON CLARK.

*Railroads. Ejectment. Execution.*

The Western Vermont Railroad Company, before their road was laid out or surveyed, procured a bond from B. to sell them such lands owned by him as should be required for their road. Their charter provided that the directors might cause such surveys of the road to be made as they deemed necessary,

and fix the line of the same, and that the company might enter upon and take possession of such lands as were necessary for the construction of their road and requisite accommodations. The survey of the road, made by order of the directors, designated certain land belonging to B., as depot grounds, and the company paid him for and took the same, but never received any conveyance thereof from him. The plaintiff, having recovered a judgment against the company, levied his execution upon a portion of this land, and brought ejectment against the company to recover possession thereof. The referee, to whom the case was referred, found that a part of the land embraced in the levy was never necessary to the company for railroad pur- poses, and would not become so prospectively; *Held*, that by B.'s contract with the company he was not bound to convey to them any greater quantity of, or estate in, his land than they required for depot accommodations: that under their charter the company could not acquire any more land, or any greater estate therein, for the purposes of a road bed or stations than was really requisite for such uses: that the estate so requisite was not one in fee simple, but merely an easement, and was therefore not subject to be levied upon by the creditors of the company: that when taken for such purposes the rule was the same whether the land was taken compulsorily by condem- nation and the award of commissioners, as to its extent and price, or under the agreement of the parties as to one or both of these particulars: that under their charter the directors had power to lay out their road and stations as they saw fit, and that so long as they acted in good faith, and not reck- lessly, their decision as to the quantity of land required for depot accommo- dations would be regarded as conclusive.

EJECTMENT for three acres and ninety-three rods of land in Manchester. The case was referred and the referee found the following facts:

The Western Vermont Railroad Company, by their directors, on the 10th of March, 1851, surveyed and laid out their road bed and appurtenances, including in such survey, as and for depot grounds, a certain tract of land in Manchester, of which the demanded premises were a portion. This survey was recorded in the proper town clerk's offices.

This tract of land was purchased and taken by the railroad company under a bond, executed to them by Josiah Burton, dated September 25th, 1850, the condition of which provided that Bur- ton should, on reasonable request, convey to the company such lands, owned by him, as should be required for their railroad, on or near the line thereof, at a certain price per acre. The com- pany paid Burton the stipulated price for the land at the time they took it, but no actual conveyance thereof was ever executed to them.

The plaintiff brought an action against the company on the 18th of May, 1853, upon which he recovered a judgment, and took out an execution, which, on the 24th of November, 1854, within five months after the rendition of the judgment, was levied upon the demanded premises. The defendant Clark was in possession of the land in controversy, under a lease of the railroad executed by the company to him on the 3d of September, 1853.

Before the referee the plaintiff claimed to recover the land in question, under his levy, on the ground that both at the time of the survey of the road, and ever since then, it was not necessary for the purposes contemplated by the charter of the company, and offered testimony to show such to be the fact. The defendants objected to such testimony on the ground that the action of the directors of the company in surveying and laying out the land as depot grounds, was conclusive as to its necessity.

The referee received the testimony and found that a portion of the demanded premises (describing it) was not when the land was taken by the company, and had not since been, and was not prospectively necessary for the purposes of the railroad, and that such portion had not been used by the defendants except for agricultural purposes, and also that a portion had remained in the possession of Burton by sufferance of the company, they claiming, however, to hold it by reason of their survey thereof and the payment of the price therefor to Burton, as above stated.

The charter of the Western Vermont Railroad Company provided that their directors might cause such examinations and surveys of the road to be made as they should deem necessary; and that the road, when so surveyed and the survey recorded, should be deemed the line on which the road was to be constructed; and that the corporation might enter upon and take possession of such lands as were necessary for the construction and maintenance of their railroad, and the requisite accommodations appertaining thereto, with a provision for the appraisal, by commissioners, of the land so taken, if the parties should disagree as to the price.*

Upon this report, the county court for Bennington county, at the June Term, 1858, rendered judgment for the defendants, to which the plaintiff excepted.

* See Laws of 1845, pp. 77–78, secs. 4 and 7.

Hill *v.* Western Vermont R. R. Co. et al.

*Roberts & Chittenden*, for the plaintiff.

*H. Canfield* and *E. J. Phelps*, for the defendants.

I. The right acquired by a railway company in land taken for use under the charter, is a mere easement, or right of way. When the use ceases, the land reverts. Upon no other principle could the application of the right of eminent domain to such a case be sustained; *Jackson* v. *R. & B. R. R. Co.*, 25 Vt. 151.

II. Whether the land is acquired by deed or by statute proceeding is immaterial. The right is the same in either instance. The company have no power to hold for any other purpose. And the deed is regarded as given in consideration of the right of the company to take *in invitum;* Charter, sec. 7 and 8; Redfield on Railways, 105–127 and cases cited in notes.

III. The right thus acquired is not subject to levy.

1. It is in this respect like any other easement, and is incapable of being taken on execution.

2. The title of the company is inseparable from the franchise. If the land could be taken from them by creditors, and applied to a purpose foreign to that specified in the charter, it would at once revert to the original owners; Redfield on Railways, 606.

IV. The same principle applies to that portion of the depot grounds, which is found by the referee in the present case, to be unnecessary for the purposes of a railroad.

This, like the rest, was included in the original survey and location of the road. And it is not denied that it was taken by the directors in good faith, and for no other purpose than that authorized by the charter.

Their action was therefore conclusive as to the necessity and propriety of including it within the limits of the road.

1. They were public officers. The charter confers upon them the power and the duty of determining the extent and location of the land required. This duty is as important to the public as to the company. In the exercise of it their action is equally conclusive with that of selectmen or commissioners in the matter of highways; Redfield on Railways, 122, 129, 148, 191.

2. But if they are not to be regarded as public officers, the charter still secures to the company the right to take and keep

such land as in the judgment of their directors may be necessary.

And though this right must of course be exercised reasonably, and in good faith, only the State and the land owners can complain if the directors take more than is actually required.

Great foresight and sagacity are often requisite to anticipate what may be the future requirements of such enterprises, destined to be perpetual, and as yet but in their infancy. After the road is once located and finished, the right to acquire land by statute proceedings cannot be exercised further. It would certainly be intolerable, if the limits of the road as established by the directors, with the acquiescence of the land owners and the public authorities, were to be forever open to be changed and contracted, by juries and other tribunals, at the instance of every creditor who might choose to try the experiment.

Nor would it be possible for the creditor to avail himself of the fruits of his levy, if permitted to enforce it. So soon as the land was thus diverted from the purpose for which it was originally taken, the title acquired by the company would terminate, and it would revert to its former owners. The right of eminent domain could hardly be exercised by the State for the purpose of acquiring land to pay the private debts of a corporation.

V. Independent of the general question, there are insuperable objections to maintaining this action.

1. The levy and appraisal was entire and indivisible, as to all the land included. A part of this land is found by the referee to be necessary for the use of the road. It will hardly be claimed that this portion was subject to levy, and if the levy is void as to part, it is void as to the whole; *Susquehanna Canal Co.* v. *Bonham*, 9 Watts & Sergt. 27; *Howe* v. *Blenden*, 21 Vt. 315; *Ammant* v. *U. C. & Pittsburgh R. R. Co.*, 13 Sergt. & R. 310.

2. The company had at the time of the levy no legal title whatever to the land included in it, and no possession of any part of it. They had at best but an equitable right.

It is clear that, under these circumstances, an action of ejectment founded on the levy cannot be supported; *Wood* v. *Scott*, 14 Vt. 523; *Waterman* v. *Cochran*, 12 Vt. 699; *Whittlesey* v. *McMahon*, 10 Conn. 138; *Bottsford* v. *Beers*, 11 Conn. 374.

Hill *v.* Western Vermont R. R. Co. et al.

REDFIELD, Ch. J. This is an action of ejectment to recover possession of certain lands which the defendants purchased of one Burton for depot purposes, about one of their stations, and which the referee in this case has found were not necessary for the present or prospective use of the company, for that purpose, the excess, according to the opinion of the referee, being some acres. The plaintiff, being a creditor of the company, levied upon this excess, together with a considerable number of acres more which the referee finds are necessary for the use of the company, for the purposes for which they were procured. The appraisal and levy was upon the entire portion of land, both that which was and that which was not necessary for the uses of the company.

The company, before they surveyed their road, contracted with Burton for the conveyance of "such lands" owned by him "as shall be required" for the company's road, "on reasonable request." The land was subsequently designated by metes and bounds, and the money paid for the piece, but the land has never been conveyed to the company.

The first question arising in the case is as to the extent of estate which Burton is bound to convey to the company. The plaintiff claims that this is an estate in fee simple, as the contract binds him to convey such lands "owned by him" as shall be required by the company. This is, no doubt, the fair and natural construction of such a contract between ordinary parties. If the land is to be conveyed and is defined as land "owned" by the obligor, nothing less could be fairly intended, in ordinary cases, than an estate in fee simple. But here the land is purchased and to be conveyed to the company for their use, "such as shall be required by them." We do not understand by this, all the lands they might ask for, but such as their powers and functions and business required. We do not think the scope of the bond could fairly be made to extend beyond this. It would be very unreasonable, as it seems to us, to construe this bond as extending beyond this and including, at the election of the defendants, all the land owned by Burton, and lying near the line of the railway.

So too it seems to us, that as Burton, by the fair construction of the bond, was only bound to convey such lands as were rea-

sonably required for the legitimate uses of the company, so he was only bound to convey such estate therein as they required for those uses.   If the extent of territory could fairly be defined and limited by the general objects and purposes of the contract, which is a familiar rule of construing all contracts, and as applied to a case of this character, a most significant and unquestionable one, as we think, the same rule also applies with equal force to the estate to be conveyed.   A contract to convey land for a particular use, or to a party having capacity to acquire a certain estate in land for a particular use, must of necessity carry the implication of such limitation upon the estate to be conveyed.

We think, therefore, that the bond, as originally given, would not have bound the party to convey more land than the company fairly required for their legitimate uses under their charter, or any greater estate in the land than such uses justly required. That is just what the company were empowered to take compulsorily.   And their charter, as we think, was not intended to give them power to acquire any more land or any greater estate in such land, for the purposes of a road bed or stations, than was really requisite for such uses under their charter.   We do not intend to say that if they purchased and took the conveyance of the fee of land for these purposes, they could not hold it or convey it, although some courts have so held.   Nor do we intend to intimate any decided opinion that they may do this.   The general provisions of the charter of this company are much like other charters in this and the other States, and similar to the general railway act, and seem to have reference to acquiring the right to such an estate in the necessary lands as is requisite for. the road bed and other incidental use and accommodation of the company, in their prescribed and necessary business.

The company may purchase lands for wood and timber, for their ordinary uses, and may, no doubt, purchase, take and hold, and also convey the fee simple of such lands.   We are not inclined here to question the right of this company to take the fee of lands by way of gift, or in payment of debts due them, either by voluntary conveyance or by levy, *in invitum.*   It is not important to discuss these propositions here.   They may all be conceded.

But they do not affect the question, what extent of land and what estate the company were expected to take by purchase or gift, or by condemnation, for their road bed and depots. We think it very obvious, from this charter and many others we have examined, where the quantity of estate is not defined, that it should be construed as we have already intimated in regard to the bond of Burton, according to the object and purport of the grant, and the necessities or wants of the corporation thereby created. It seems to us to be leaving all just limits of construction to go beyond this. It is certain, as already intimated, that this is the ordinary rule of construing contracts. And statutes are generally construed much after the same rules as contracts, and, especially statutes of this character, which are much in the nature of contracts between the sovereignty and the shareholders, or, strictly speaking, between the sovereignty and the corporation. In other words, the charter is a grant of certain franchises and immunities, upon certain terms and conditions, and with certain specified or implied limitations. These conditions and limitations are the consideration and the counterpart, so to speak, of the grant. By accepting the grant the corporation bind themselves to perform the obligations and duties reasonably and fairly implied by the conditions of the grant. So that the charter should receive the same construction as any other contract of a similar character.

One of the important franchises of railway corporations, and the one which distinguishes corporations of this public character from ordinary business corporations, on account of its sovereign or prerogative character, is that right which in the sovereign is called eminent domain, which is the power to invade private property and appropriate it to its own purposes. The right to exercise this function is made dependent upon rendering an equivalent in money, and the implied compact not to acquire more land than they need. And the charters, or general laws, in most of the American States, allow the details of the appropriation of lands to the use of railways, to be arranged, either by the judgment of certain public functionaries designated for that purpose, or by the consent of the land owner. But in the latter mode even, the proceeding is, in some sense, compulsory. The land owner does not stand precisely in the position of an ordinary proprietor in

the market. He has no election whether he will part with his land or not, but only whether he will fix the terms by negotiation or by the appraisal of the commissioners, or the court. In either mode of appropriating land for the purposes of the company, where they have by their charter the power to take it compulsorily, there is this implied limitation upon the power, that the company will take only so much land or estate therein as is necessary for their public purposes. It does not seem to us to make much difference in regard to either the quantity or the estate, whether the price is fixed by the commissioners or by the parties. For under this charter it is the act of the directors which designates the extent of land to be taken, and thus far the taking is compulsory and strictly under the powers granted by the charter.

In regard to the mode of appropriating land to the purposes of the road bed and depots of a railway company, it is obvious that it should be done in some way which shall be judicial and final, for the time at least. This is necessary both for the company and the land owner, and when done in the mode pointed out in the charter, it must be final, or should be so, unless some power is reserved, either expressly or impliedly, to change the location of the road, as in the defendants' charter seems to be given, or to enlarge its facilities with the advancement of business, which this charter does not give in terms. This is not ordinarily reserved to railways. When once located the location is commonly regarded as final. They must take such lands as will be likely to accommodate their business, both present and prospective. It doing this it would not be wonderful if they should take more, sometimes, than every one regarded as necessary. The same may be true of their road bed. A jury or referee might well consider, in many cases, no doubt, that at many points four or five rods, or even three rods in width, was just as beneficial, for all the purposes of the road, as six rods, which some of the early chartered roads in this State are allowed to take and do take. The same may be often true of the land taken for depot accommodations.

But if the road bed or land for stations is taken in the mode prescribed in the charter and general law of the State, whether by the judgment of the commissioners, as to its extent as well as

the land damages, or by the act of the directors through their surveyors and engineers, as to its extent, and the appraisal of the commissioners as to its value, or by the directors as to its extent, or the agreement of parties as to the price, as in this case, when once taken in the mode prescribed in the charter, as this land was taken, it is regarded as well settled that the land so taken is not subject to the levy of an execution. This is put upon the ground, and justly we think, that the estate, being a mere easement for a particular use, is not of the quality and character which by the statute is made subject to a levy. This is not an estate in fee, or for life, or years, or indefinitely, or an equity of redemption, which are the estates defined in the statute. But it is an easement, a right to use the land in a particular mode for a particular purpose, and which cannot be transferred to an ordinary person having no right to use it in that mode or for that purpose, since the estate would cease and the land revert, the moment it was put to any other use than the one designated in the charter or statute, by or under which the appropriation was made.

So that whether the company take more or less, if taken for these purposes and no other, and only an easement is acquired by the company, it is not an estate which can be transferred by a levy to the creditors of the company, or by any conveyance, in parcels, probably. But of this we need not speak. It is certain the statute has not provided for levying upon any such estate. And this we think is the only estate for which the company contracted with Burton, or which he is bound to convey to them.

And as to the quantity of land taken, if the directors of the company have power to lay out their own road in any place they choose, and to the extent of five rods in width, and to take such lands for depot purposes as they deem expedient, and they have acted in good faith, we do not see very well how their proceedings can be brought in question by any one. It may have been the folly of the legislature to grant any such power to the directors of the company, but if they have done so, and this power is altogether unlimited, unless they act rashly or in bad faith, it is not very obvious how they are to be controlled in the matter. No doubt if they act recklessly or extravagantly, so as to indicate either utter incompetence, or corruption, or undue influence,

or bad faith, a court of equity, at the suit of the land owner or the stockholders, would set the matter right. But this would thus be done in such a mode as to settle it definitely and not to leave it subject to the confusion consequent upon subjecting it to the action of independent tribunals, in regard to portions of the land taken for the same purpose whose decisions would almost inevitably produce more or less confusion and uncertainty. But so long as the land is appropriated to the road bed and depot purposes in the very mode prescribed in the statute, we do not very well comprehend how it can be appropriated in parcels to the payment of the debts of the company, by means of levies, even if the fee had been conveyed to the company.

In cases where the company purchase lands, not intending or supposing they are to be used or are requisite for depot purposes, as is sometimes the case, because they can obtain them in that mode upon more reasonable terms, and where, as in such cases is more usual, the conveyances profess to convey the fee simple, and no separation has been made between such of the lands as are required for depot purposes and such as were never supposed to be requisite for any such purpose, it is not necessary to give any intimation what might be the rights of creditors or what course should be pursued to secure such rights, such as they are, if any.

As the company had no such estate in these lands, or any such extent of territory as could be subjected to the levy of executions, at the suit of their creditors, treating their rights the same as if Burton had already executed all the conveyance which a court of equity would compel him to execute, it is not necessary to consider the other questions in the case.

Judgment affirmed,