**Opinion issued October 2, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00811-CV

_____

## UNION PACIFIC RAILROAD COMPANY, Appellant

## V.

## AMERITON PROPERTIES INCORPORATED, Appellee

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2012-03918

## O P I N I O N

Ameriton Properties Incorporated sought a declaratory judgment that it owned a strip of land in western Houston and that Union Pacific Railroad Company's only interest in that land was a now-abandoned right of way. Union Pacific counterclaimed, seeking a declaratory judgment that it owned an undivided

fee interest in the land pursuant to an 1879 deed and seeking its attorney's fees. Ameriton moved for summary judgment, which the trial court granted as to ownership of the land and denied as to attorney's fees and costs. Union Pacific filed two motions for partial summary judgment, one regarding ownership and one regarding Ameriton's entitlement to attorney's fees, both of which the trial court denied. Ameriton moved for judgment based on these orders and the parties' agreement as to necessary attorney's fees. The trial court then entered a final judgment declaring that Union Pacific's only interest in the property was an abandoned right of way and that Ameriton owns the property free and clear of any claims by Union Pacific and awarding Ameriton its attorney's fees. Union Pacific appeals. We reverse and remand to the trial court for further proceedings.

### Background

Disputes over the property in question stretch back more than 130 years. They began when, in the late 1800s, the Galveston, Harrisburg and San Antonio Railway Company (G.H.S.A.) condemned a right of way across a strip of land in western Houston. Union Pacific is the successor in interest to G.H.S.A. At the time of the condemnations, Thomas Hart and S.E. Lawrence owned a one-half undivided interest in the land in question, and the estate of John Lawrence owned the remaining one-half undivided interest. Ameriton is the successor in interest to Hart, S.E. Lawrence, and John Lawrence's heirs.

2

G.H.S.A. successfully condemned the right of way as to the one-half interest held by Hart and S.E. Lawrence.  The nature of the interest obtained through that condemnation proceeding is not at issue in this appeal.

G.H.S.A. also condemned the interest held by the estate of John Lawrence, but G.H.S.A. and the administratrix of the estate, Mary E. Lawrence ("Mary"), settled the dispute while the decision was on appeal.  *See Galveston, H. & S.A. Ry. Co. v. Blakeney*, 11 S.W. 174, 174 (Tex. 1889).  In 1879, to settle her dispute with G.H.S.A., Mary, on behalf of the estate, executed a deed, granting an interest in the land to G.H.S.A.  The record is at best ambiguous as to whether G.H.S.A. obtained any interest in the land through its condemnation proceeding against Mary or the only interest G.H.S.A. obtained from Mary was through the deed.  The precise nature of the interest conveyed by the deed is at the heart of this suit, and we therefore include the text here in its entirety:

> State of Texas County of Harris: Know all men by these presents:
>
> That Mary E. Lawrence, administratrix of the estate of John Lawrence, deceased, of the County of Harris and State of Texas, for and in consideration of the enhanced value to be given, and which is contemplated to arise in my lands and other property by the location and speedy construction of the Galveston, Harrisburg & San Antonio Railway and for the further consideration of Four Hundred and Thirty-Seven 00/100 Dollars to me in hand paid, the receipt whereof is hereby acknowledged, have [sic] granted, bargained, sold, released, and by these presents to [sic] give, grant, bargain, sell and release to the Galveston, Harrisburg and San Antonio Railway Company, the following described tract or parcel of land, situating, lying and being

in the County of Harris and State of Texas, containing three & one-half acres, and more particularly described and known as follows, viz:

A strip of land, fifty feet in width by __ [sic] feet in length of lot No. Six of the Hollingsworth survey of the John Austin grant near the western suburbs of the City of Houston and between Buffalo Bayou and the lines of the Houston & Texas Central Railroad—Being the land condemned by the Commission to the use of said Railway Company for Right of Way in Case No. 706, on docket of the County Court, Harris County, a plat of said tracts is made part hereof, but I hereby reserve herein the right to all the timber upon the tract given for right of way together with all and singular the improvements, rights, hereditaments, and appurtenances to the same belonging or in any-way [sic] incident or appertaining: To have and to hold, the said land and appurtenances upon the said Galveston, Harrisburg & San Antonio Railway Company and its legal representatives forever; and I bind myself heirs and legal representatives to warrant and forever defend, all and singular, the title to the aforesaid premises unto the said Galveston, Harrisburg & San Antonio Railway Company, their successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, subject, however, to the following condition, to wit: that if the Galveston, Harrisburg & San Antonio Railway Company shall, on or before the first day of January 1881, build its railway and run its cars to the Texas & New Orleans RR Depot, then only in that case this Deed of Conveyance is absolute, and to be and remain full [sic] force and effect; but otherwise to be null and void without further act or reconveyance.

IN TESTIMONY WHEREOF, have hereunto set hand and seal, using scroll for seal, this 15 day of December, A.D., 1879.[1]

---

[1] Because of the age of this handwritten document, the copies in the record are of extremely poor quality. The parties, however, stipulated to a transcription of the deed in the trial court. Stipulations conclusively resolve the facts stipulated and all matters necessarily included therein and bind the court. *See Left Gate Prop. Holdings, Inc. v. Scott*, No. 01–10–00334–CV, 2011 WL 1326237, at *8, *10 (Tex. App.—Houston [1st Dist.] Apr. 7, 2011, pet. denied) (mem. op.); *see also Gleason Design Grp. v. Merit Inv. Partners, L.P.*, No. 05–96–00157–CV, 1997 WL 438771, at *2 (Tex. App.—Dallas Aug. 6, 1997, no writ); *Morgan v. Ebby*

The dispute did not end there, however. M.E. Blakeney, as guardian for two minor children of John Lawrence, sued G.H.S.A. in 1888, seeking to recover the strip of land on behalf of the children. *Blakeney*, 11 S.W. at 174. The trial court entered judgment for the children, awarding them $360, and simultaneously condemned a right of way in John Lawrence's interest in the land for G.H.S.A, "to be enjoyed by [the railway] as long as it keeps its said track thereon." Blakeney appealed to the Supreme Court of Texas, which reversed, holding that the minor children had benefitted from the $437 that G.H.S.A. had paid Mary in exchange for her deed and were not entitled to a further recovery. *Id.* at 174–75.

Through various transactions, Union Pacific and Ameriton succeeded to the various interests held by their respective predecessors in title. Although there were once tracks on the property, Union Pacific has removed them and no longer uses the property for railroad purposes. According to Ameriton, however, it recently learned that Union Pacific claims a fee simple interest in the property, prompting it to bring this suit.

The parties stipulated to various facts before submitting their summary judgment motions, including several documents—a plat, the judgment from the condemnation suit involving the interest held by Hart and S.E. Lawrence, the trial court's opinion in *Blakeney*, and the Supreme Court's opinion in *Blakeney*—which

*Halliday Real Estate, Inc.*, 873 S.W.2d 385, 390 (Tex. App—Fort Worth 1993, no writ). Accordingly, we use the parties' stipulated text.

5

referred to the same piece of property that is at issue here. They also stipulated that Ameriton "owns the Property, subject to whatever rights or interests were conveyed in the deed," that Union Pacific is successor in title to G.H.S.A., and that Union Pacific has removed its tracks from the property and no longer uses it for railroad purposes. After the trial court granted Ameriton summary judgment on the ownership issue, the parties also stipulated to the amount of Ameriton's reasonable and necessary attorney's fees, although they continued to dispute whether such fees were recoverable.

Ameriton sought summary judgment on three grounds: (1) the deed conveyed only a right of way, not a fee interest in the property; (2) Union Pacific's claim to the land is barred by the doctrine of res judicata (claim preclusion); and (3) that claim is barred by the doctrine of collateral estoppel (issue preclusion). The parties agree that the sole issue presented to the trial court was the nature of the interest conveyed by the 1879 deed from Mary to G.H.S.A.

On appeal, Union Pacific raises six arguments. First, it argues that it should not have to challenge and negate each theory in Ameriton's motion for summary judgment because the trial court specified its reasoning. Second, it argues that the trial court erred in ruling that the 1879 deed to G.H.S.A. conveyed a right of way and not a fee title. The third and fourth arguments address whether Ameriton was entitled to summary judgment by application of res judicata and collateral estoppel,

respectively, to the *Blakeney* opinion. Fifth, Union Pacific argues that this Court should reverse the trial court's judgment and render judgment for Union Pacific. Finally, Union Pacific argues that the trial court's award of attorney's fees was improper because Ameriton's action was really an action to quiet title, not a declaratory judgment action.

## Standard of Review

This court reviews an order granting or denying a motion for summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2008). "If both parties file competing motions for summary judgment and one is granted and the other overruled, on appeal this Court will determine all questions presented, including the propriety of the order overruling the losing party's motion." *Jones v. City of Houston*, 907 S.W.2d 871, 875 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Int'l Ass'n of Fire Fighters v. Baytown*, 837 S.W.2d 783, 786 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). "The Court is authorized to either affirm the judgment that the trial court rendered or reverse the judgment and render the judgment that the trial court should have rendered." *Id.* (citing *Int'l Ass'n of Fire Fighters*, 837 S.W.2d at 786; TEX. R. APP. P. 80(b)).

If a written instrument, such as a deed, is worded in such a way that it can be given a definite or certain legal meaning, the contract may be construed as a matter

of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (citation omitted); *see also Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam). "We must assume the parties to the instrument intended every clause to have some effect; therefore, the language of the deed should be interpreted so that no provision is rendered meaningless." *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied); *see also Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991); *Coker*, 650 S.W.2d at 393. "A deed will be construed to confer upon the grantee the greatest estate that the terms of the instrument will permit." *Waters v. Ellis*, 312 S.W.2d 231, 234 (Tex. 1958); *see also Chambers v. Huggins*, 709 S.W.2d 219, 222 (Tex. App.—Houston [14th Dist.] 1986, no writ).

Whether a contract is ambiguous is a question of law, which we review de novo. *Coker*, 650 S.W.2d at 394. When a contract contains an ambiguity, summary judgment is precluded because interpretation of the contract becomes a fact issue. *Id.* (citing *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1980)).

A simple lack of clarity or disagreement between parties does not render a term ambiguous. *See DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100

(Tex. 1999). Rather, "[a]n ambiguity arises only after the application of established rules of construction leaves an agreement susceptible to more than one meaning." *Id.* "[F]or an ambiguity to exist, both potential meanings must be reasonable." *Id.* "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker*, 650 S.W.2d at 394. If the contract is ambiguous as a matter of law, only then is parol evidence of the parties' interpretation of the contract admissible. *Pitts & Collard, L.L.P. v. Schecter*, 369 S.W.3d 301, 313 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

**Whether Union Pacific Must Attack All Grounds in Ameriton's Motion for Summary Judgment**

A party seeking reversal of a summary judgment must attack every basis upon which the summary judgment could have been granted. *E.g.*, *Goldman v. Olmstead*, 414 S.W.3d 346, 359 (Tex. App.—Dallas 2013, pet. denied); *Trevino & Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 144 (Tex. App.—Dallas 2013, no pet.). "When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

Union Pacific first argues that the trial court's order granting Ameriton's motion for summary judgment as to the ownership of the property stated only one ground for the decision: that the deed conveyed only a right of way interest. Therefore, Union Pacific argues that it should not have to attack any other grounds put forward in Ameriton's motion for summary judgment.

As a threshold matter, we note that the trial court's order was not explicit as to the basis for its decision. While the order states that "the deed . . . conveyed a right-of-way to the Galveston, Harrisburg & San Antonio Railway Company, predecessor-in-title of Union Pacific Railroad Company," it does not explain in what sense the term "right-of-way" is meant. As the Supreme Court of Texas has explained, "The term 'right of way' has a two-fold signification." *Tex. Elec. Ry. Co. v. Neale*, 252 S.W.2d 451, 454 (Tex. 1952). "It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed." *Id.* That is, "[r]ight-of-way, when used alone, can have more than one meaning: it may denote either a right of passage or the right-of-way strip of land itself." *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 871 (Tex. App.—Austin 1988, writ denied); *see also City of Seabrook v. Port of Hous. Auth.*, 199 S.W.3d 403, 433 n.20 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd). Accordingly, use of the term "right of way" in a deed or other document

does not necessarily define or limit the estate conveyed. *Neale*, 252 S.W.2d at 454. The trial court did not connect its finding that "the deed . . . conveyed a right-of-way" to its later finding that "the property . . . is owned by Ameriton free and clear of any and all claims of Union Pacific." Thus, it is not clear that the trial court specified the grounds for its order.

But whether or not the trial court based its order on Ameriton's motion for summary judgment entirely on the deed, we review the cross-motions for summary judgment and all supporting evidence and determine all questions presented. *Jones*, 907 S.W.2d at 875. Union Pacific must therefore attack all grounds upon which the motion could have been granted and, indeed, has actually done so. *See FM Props. Operating Co.*, 22 S.W.3d at 872–73; *Goldman*, 414 S.W.3d at 359; *Trevino & Assocs. Mech.*, 400 S.W.3d at 144. Accordingly, we overrule Union Pacific's first issue as moot.

### Application of the Doctrine of Res Judicata

To determine the effect of the deed, we first consider whether the doctrine of res judicata bars Union Pacific's claims to the property. Union Pacific argues in its third issue that it does not, as the *Blakeney* Court did not determine the nature of the interest conveyed by the deed. Ameriton responds that *Blakeney* is dispositive of the interest conveyed by the 1879 deed, thus barring Union Pacific's claims and mandating judgment for Ameriton.

11

The doctrine of res judicata, often referred to as claim preclusion, "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). The doctrine

> requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

There is no question that the first element is satisfied, in that *Blakeney* represents a final adjudication on the merits of the claims by John Lawrence's minor children, through their guardian, against G.H.S.A. *Blakeney*, 11 S.W. at 174. The parties have stipulated that the second element is satisfied, as each party is in privity with parties bound by *Blakeney*. The only question we must answer is whether the third element is satisfied: that is, whether this suit raises claims that were or could have been raised in *Blakeney*.

*Blakeney* did not address the nature of the interest conveyed by the 1879 deed. The only issue was whether, given that the children were not parties to the condemnation proceeding against Mary, "the [trial] court erred in giving judgment for plaintiffs without requiring them to refund to [G.H.S.A.] the money paid by

12

it . . . ." *Id.* at 174. Although the suit was an action to try title, the opinion never mentions the deed and never uses the words "fee" or "easement." *Id.* It uses "right of way" several times, but only once clarifies whether it is using "right of way" in the sense of a right of passage or in the sense of a strip of land. *Id.* at 174–75; *see also Neale*, 252 S.W.2d at 454; *City of Seabrook*, 199 S.W.3d at 433 n.20; *Lakeside Launches*, 750 S.W.2d at 871. In that one context, the Court merely noted that the trial court "condemned a right of way in the land to the use of the company." *Blakeney*, 11 S.W. at 174. But the Court then reversed that judgment on equitable grounds and rendered judgment for G.H.S.A., holding, "It would be against the manifest justice and equity of the case to permit [the children] to recover the land without refunding the money of which they have had the benefit." *Id.* at 175.

Ameriton argues that *Blakeney* nonetheless is "unmistakably clear that the deed conveyed a 'right of way' and that such conveyance was made in accordance with a condemnation decree." Because a railroad cannot acquire fee simple title via condemnation, Ameriton argues that *Blakeney* rests on a holding that only a right of way, not fee simple title, was conveyed by the deed. *See* TEX. TRANSP. CODE ANN. § 112.055 (West 2011) ("A right-of-way that a railway company in this state acquires by condemnation does not include a fee simple estate in public or private land."), *added by* Act of May 11, 2009, 81st Leg., R.S., ch. 85, § 2.03,

13

sec. 112.005, 2009 Tex. Gen. Laws 153, 161; *see also* Act of May 11, 2009, 81st Leg., R.S., ch. 85, § 5.01(a), 2009 Tex. Gen. Laws 153, 205 (repealing TEX. REV. CIV. STAT. ANN. art. 6339 (predecessor to TEX. TRANSP. CODE ANN. § 112.055 that was in effect at time of 1879 deed)); *Brightwell v. Int'l-Great N.R.R. Co.*, 49 S.W.2d 437, 438 (Tex. 1932) ("It is the settled law of this state that a railroad, when it secures its right of way by condemnation proceedings, acquires a mere easement, but it may secure and hold a fee-simple estate in the land across which it constructs its road.").[2]

Contrary to Ameriton's position, *Blakeney* never mentions the deed directly. Further, *Blakeney* does not hold that the deed conveyed only what the railroad could have obtained via condemnation.[3] Rather, the *Blakeney* Court described as "beyond controversy" G.H.S.A.'s allegations

> that, pending the appeal, a compromise was agreed upon between the parties; that in pursuance of such compromise defendant paid the administratrix the sum of $437, which she received in full satisfaction for the land; that she subsequently reported her action to the county court; that her report was confirmed; . . . that the money so received was appropriated by her in discharge of liens then subsisting upon other real estate of her intestate, which the plaintiffs inherited from their father. . . . that *a decree was entered in the county court in the condemnation proceedings confirming the title of defendant to the*

---

[2] As support for its position, Ameriton cites *Thompson v. Janes*, 251 S.W.2d 953 (Tex. 1952), but *Thompson* merely states the rule that a railroad may only take a right of way easement via condemnation; it is silent regarding deeds issued in settlement of condemnation proceedings. 251 S.W.2d at 955.

[3] Nor does the deed itself indicate that it was made in accordance with a condemnation decree or other court order.

> *right of way*, and that *the administratrix made a conveyance of the right of way in accordance with that decree*.

11 S.W. at 174 (emphasis added). *Blakeney* does not hold that the decree in question was a decree condemning a right of way. Rather, the decree merely "confirm[ed] the title of defendant to the right of way," and Mary's conveyance was "in accordance with that decree." *Id. Blakeney* is silent on both the extent of the title conveyed by Mary and the sense in which "right of way" is meant. Rather, the holding of *Blakeney* is merely that John Lawrence's children were not entitled to recover G.H.S.A.'s interest under that title without first refunding the money received by Mary and used for the children's benefit. *Id.* at 175.

Ameriton argues that, even if *Blakeney* did not explicitly determine the nature of the interest held by G.H.S.A., it did so by implication. Thus, it asserts, G.H.S.A. should have challenged the Supreme Court's description of G.H.S.A.'s interest as a right of way and argued that it held a fee title. But G.H.S.A. was not required to do so in order to challenge the lower court's award of damages on the grounds that the children were improperly omitted as parties in the condemnation proceeding. More importantly, the Supreme Court did not have to decide that question. Rather, the issue resolved by *Blakeney* was whether G.H.S.A. could maintain title at all against an attack by John Lawrence's children, not the nature of that title. *Id.* at 175.

Ameriton draws a parallel between this case and a case involving another century-old grant of land to a railroad, *Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257 (2014). In that case, the United States patented land to Marvin Brandt's parents in 1976, subject to an existing right-of-way for a railroad created under the federal General Railroad Right-of-Way Act of 1875. 134 S. Ct. at 1262; *see also* General Railroad Right-of-Way Act of 1875, ch. 152, 18 Stat. 482 (codified at 43 U.S.C. §§ 934–39), *repealed by* Federal Land Policy and Management Act of 1976, Pub. L. No. 94–579, 90 Stat. 2743. The question before the Court was "what happens to a railroad's right of way granted under a particular statute—the [1875 Act]—when the railroad abandons it: does it go to the Government, or to the private party who acquired the land underlying the right of way?" 134 S. Ct. at 1260.

At the government's urging, the Court had previously held that a right under the 1875 Act conveyed a simple easement, in *Great Northern Railway Co. v. United States,* 315 U.S. 262, 62 S. Ct. 529 (1942). Thus, in *Marvin M. Brandt Revocable Trust*, the Court rejected the government's argument that the right of way conveyed under the Act "is tantamount to a limited fee with an implied reversionary interest." 134 S. Ct. at 1268. The Court explained, "We decline to endorse such a stark change in position, especially given 'the special need for certainty and predictability where land titles are concerned.'" *Id.* (citation

16

omitted).  As the Court explained, the government lost in *Marvin M. Brandt Revocable Trust* "in large part because it won when it argued the opposite before this Court more than 70 years ago." *Id.* at 1264.

According to Ameriton, *Marvin M. Brandt Revocable Trust* is relevant because G.H.S.A. took the position in *Blakeney* that it was entitled to a mere easement, not a fee interest.  Thus, Ameriton argues that we should follow the Supreme Court's logic and reject Union Pacific's claim to the land.  We disagree.  While the *Marvin M. Brandt Revocable Trust* Court was able to quote the government's earlier brief in *Great Northern Railway*, the record here does not contain the parties' pleadings in *Blakeney*, nor is the *Blakeney* opinion clear as to the arguments made by the parties to that case.  *See id.*  Moreover, the *Marvin M. Brandt Revocable Trust* decision "turn[ed] on what kind of interest Congress granted to railroads in their rights of way in 1875," a question that both is irrelevant here and had already been explicitly addressed in *Great Northern Railway*.  *Id.* at 1268.  *Blakeney*, by contrast, made no explicit findings about the nature of the interest conveyed by the 1879 deed.

We hold that *Blakeney* is not a final adjudication of the nature of the rights conveyed to G.H.S.A. and that issue was neither raised nor required to be raised in that case.  Accordingly, we sustain Union Pacific's third issue.

## Application of the Doctrine of Collateral Estoppel

We next turn to the doctrine of collateral estoppel, also known as issue preclusion, which "prevents relitigation of particular issues already resolved in a prior suit." *Barr*, 837 S.W.2d at 628.

> A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Ameriton argues that the doctrine applies to *Blakeney* to bar Union Pacific's claims, while Union Pacific argues that it does not.

We have already noted that *Blakeney* does not discuss the nature of the interest conveyed by the 1897 deed, but focused on whether that interest could survive attack by John Lawrence's children. Collateral estoppel applies only if "the facts sought to be litigated in the second action were fully and fairly litigated in the first action." *Id.* Further, "collateral estoppel requires that the issue decided in the first action be identical to the issue in the pending action." *Mann v. Old Republic Nat'l Title Ins. Co.*, 975 S.W.2d 347, 350 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (citing *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992)).

We hold that the nature of the interest conveyed by the 1897 deed was not fully and fairly litigated in *Blakeney*.[4] Accordingly, we hold that collateral estoppel does not bar Union Pacific's claims and sustain Union Pacific's fourth issue.

## The Interest Conveyed by the Deed

Because *Blakeney* does not bar Union Pacific's claims, we must determine the nature of the interest conveyed by the 1879 deed. "The construction of an unambiguous deed is a question of law for the court." *Luckel*, 819 S.W.2d at 461 (citing *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)). "The primary duty of a court when construing such a deed is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule." *Id.* (citing *Garrett v. Dils Co.*, 299 S.W.2d 904, 906 (Tex. 1957)). We therefore look to the terms of the deed itself, seeking to harmonize all parts of it. *Id.* In Texas, "[a]n estate in land that is conveyed or devised is a fee simple unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law." TEX. PROP. CODE ANN. § 5.001 (West 2004).

---

[4] To the extent that *Blakeney* characterized that interest as a "right of way," such characterization did not clearly identify the interest as a right of passage or as ownership of the land itself. *Neale*, 252 S.W.2d at 454; *City of Seabrook*, 199 S.W.3d at 433 n.20; *Lakeside Launches*, 750 S.W.2d at 871. Moreover, any such characterization was not "essential to the judgment" and thus cannot collaterally estop Union Pacific. *See Sysco Food Servs.*, 890 S.W.2d at 801.

The deed states that Mary has "granted, bargained, sold, released, and by these presents [does] give, grant, bargain, sell and release to [G.H.S.A.] the following described tract or parcel of land," which is then described. The description includes the clarification, "Being the land condemned by the Commission to the use of said Railway Company for Right of Way in Case No. 706." It also reserves to Mary "the right to all timber upon the tract given for right of way together with all and singular the improvements, rights, hereditaments, and appurtenances to the same belonging or in any-way [sic] incident or appertaining." According to Ameriton, the use of the term "right of way" in these clauses indicates that the deed conveyed only a right of way across the land, not a fee interest in the land itself.

Ameriton argues that the deed contains no indication that it conveyed any interest other than what was condemned, that is, a right to use the land. On the contrary, the deed's only reference to the condemnation was in the context of describing the location of the land to be conveyed. That is, it merely states that the deed conveys the same land that was at issue in the condemnation proceeding, a statement that we do not find particularly remarkable given that Mary executed the deed to settle a legal dispute. The deed contains no indication that the interest conveyed was limited to the interest that the railroad could have obtained through the condemnation proceeding.

Ameriton also argues that the interest conveyed by the deed was necessarily limited to that which the railroad could have obtained by condemnation, citing *Red River, Texas & Southern Railway Co. v. Davis*, 195 S.W. 1160 (Tex. App.—Dallas 1917, writ ref'd). In that case, the owner in fee simple of the land in controversy "executed a conveyance in form of a warranty deed" to the railroad, on the express condition that the land could be used for "railroad purposes only." 195 S.W. at 1161. Critically, however, the owner and the railroad had previously agreed that the owner "would only deed such interest in said land as the railway company could procure by the condemnation proceedings, . . . [and] the railway company [knew] at the time [of the deed] that [the owner] only intended to part with an easement for railroad purposes exclusively." *Id.* at 1161–62. There is no evidence of such an agreement between G.H.S.A. and Mary. Moreover, the issue decided in *Red River* was not whether the interest conveyed was an easement or a fee, but whether the deed contained a condition subsequent resulting in forfeiture of the right of way due to the railroad's failure to use it for railroad purposes. *Id.* at 1162. Therefore, we reject Ameriton's interpretation of *Red River*.

Next, Ameriton argues that the 1879 deed's reference to the property as "given for right of way" in the clause reserving Mary's timber rights, viewed in combination with the grantor's intent to enhance the value of surrounding property and the deed's settlement of a condemnation attempt, supports Ameriton's

21

position. Ameriton does not cite any authorities as support for this proposition. *See* TEX. R. APP. P. 38.1(i). We note that one of the deeds construed in *Stevens v. Galveston, Harrisburg & San Antonio Railway Co.*, 212 S.W. 639 (Tex. Comm'n App. 1919, judgm't adopted), contained similar language, conveying "the right of way for said company's railway." 212 S.W. at 640. At face value, this conveyed "the right of way" only, not a fee interest, yet the Commission of Appeals construed this deed as granting G.H.S.A. "an indefeasible fee-simple title to the property." *Id.* at 645. The precise language before us is contained in a reservation of rights, not a granting or habendum clause, and states, at most, a reason or purpose for the grant, not a limitation on the interest conveyed. *Id.* We therefore decline to read the phrase "given for right of way" in the clause reserving Mary's timber rights as prevailing over all other language in the deed purporting to convey "the following described tract or parcel of land."

Ameriton also argues that Mary accepted the condemnation award for a right of way across the property, rather than money paid as a purchase price, confirming that she conveyed only what the railroad could obtain through condemnation, that is, a right of way. Ameriton does not cite any evidence supporting this claim in the record. On the contrary, both the deed and the *Blakeney* opinion confirm that G.H.S.A. paid Mary $437 for whatever rights it obtained under the deed. *See Blakeney*, 11 S.W. at 174. The record does not reflect that this was the amount of

22

the condemnation award as to the interest held in the land by John Lawrence's estate. Moreover, any such evidence would be parol evidence, which we can only consider if the deed is ambiguous. *See*, *e.g.*, *David J. Sacks, P.C.*, 266 S.W.3d at 450–51; *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520. Although we must decide as a question of law whether the deed is ambiguous, we note that neither party contends that it is. *See Coker*, 650 S.W.2d at 394.

On its face and "unless the estate is limited by express words or unless a lesser estate is conveyed or devised by construction or operation of law," the deed conveys a fee estate. TEX. PROP. CODE ANN. § 5.001. While it does not explicitly state that it conveys a fee title, it also lacks "express words" clearly indicating an intent to convey a lesser estate. Instead, it purports to convey a "tract or parcel of land." It describes the grant in terms of the land itself, not in terms of G.H.S.A.'s rights over the land. It conveys "the said land and appurtenances." Mary promised, on behalf of herself, her heirs, and her legal representatives, to defend G.H.S.A.'s "title to the aforesaid premises," not merely a right of use.

Further, Mary reserved to herself timber rights in the land conveyed. If G.H.S.A. obtained a mere easement, it would have had no right to do anything to the timber on the land, except as reasonably necessary for the full enjoyment of the easement, unless such rights were expressly granted in the deed. *See*, *e.g.*, *Knox v. Pioneer Natural Gas Co.*, 321 S.W.2d 596, 601 (Tex. Civ. App.—El Paso 1959,

writ ref'd n.r.e.); *San Jacinto Sand Co. v. Sw. Bell Tel. Co.*, 426 S.W.2d 338, 344–45 (Tex. Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The deed's reservation of timber rights was thus unnecessary if the deed conveyed only an easement or right of way. We must assume the parties did not intend any provision of the deed to be meaningless. *Luckel*, 819 S.W.2d at 461; *Coker*, 650 S.W.2d at 393; *Hausser*, 345 S.W.3d at 466. The reservation of timber rights implies that the deed conveyed an estate that would, but for the reservation, have included those rights. That is, the reservation implies that the deed conveyed a fee estate.

Ameriton also argues that the estate conveyed by the deed is limited by express words in that the consideration given included "the enhanced value to be given, and which is contemplated to arise in [Mary's] lands and other property by the location and speedy construction of the [G.H.S.A] Railway." According to Ameriton, Texas courts have long treated instruments in which the enhanced value of surrounding land forms part of the consideration as merely granting an easement.[5] As support, Ameriton relies on *Stevens*.

In *Stevens*, the Commission of Appeals identified three classes of cases construing deeds and contracts for deeds to railway companies. 212 S.W. at 641–

---

[5] We are not aware of any policy supporting such a rule. A property owner may desire, for example, to benefit from the additional customers a railroad may soon bring to her property and, accordingly, negotiate a settlement to resolve a condemnation proceeding quickly. This does not imply that the owner cannot convey a fee. Further, as discussed below, the law does not support such a rule.

43. The first class consisted of cases holding that "where the deed in the granting clause conveys a right of way only, the estate conveyed will be held to be an easement, and not a fee, although apt words to convey the fee are employed." *Id.* at 641–42 (citing *Right of Way Oil Co. v. Gladys City Oil Co.*, 157 S.W. 737 (Tex. 1913)). That is, courts faced with such deeds look to the granting clause of the deed first and, if that clause conveys only an easement, the deed as a whole conveys only an easement, even if other clauses might be read to convey a fee. *Id.* By contrast, "if the granting clause conveys a fee title to the property, subsequent recitals, which merely limit the use to which the same may be put, do not restrict the conveyance to an easement." *Stanbery v. Wallace*, 45 S.W.2d 198, 199 (Tex. Comm'n App. 1932, holding approved); *see also Veltmann v. Damon*, 701 S.W.2d 247, 247–48 (Tex. 1985) ("It is well-settled that when there is an irreconcilable conflict between clauses of a deed, the granting clause prevails over all other provisions.").

The first class of cases identified in *Stevens* included only one Texas case: *Right of Way Oil Co. v. Gladys City Oil Co.*, 157 S.W. 737 (Tex. 1913). That case involved a deed reading, "have and do hereby grant, sell and convey . . . for the purpose of constructing, operating and maintaining its railroad, the right of way, two hundred feet in width, over and upon the above-described tract of land." 157 S.W. at 738. This clause is totally unlike Mary's grant of "the following described

25

tract or parcel of land." Thus, *Right of Way Oil* does not support Ameriton's arguments. The other cases in this first class of cases cited by *Stevens* are similarly distinguishable.[6]

The second class of cases identified in *Stevens* comprised "those in which the grantee claims under a contract for a conveyance of lands for right of way or other railway purposes, with a covenant to convey the fee-simple title." *Stevens*, 212 S.W. at 642 (citing *Uhl v. Oh. River R. Co.*, 41 S. E. 340, 341 (W. Va. 1902); *Lockwood v. Oh. River R. Co.*, 103 F. 243, 243–44 (4th Cir. 1900); *Hill v. W. Vt. R.R. Co.*, 32 Vt. 68, 69 (1859)). The cases in this class all involved agreements

---

[6]     *See Jones v. Van Bochove*, 61 N.W. 342, 343 (Mich. 1894) (deed conveyed easement where granting clause gave "[a]ll that certain piece or parcel of land . . . described as follows, to wit: The right of way for a railroad"); *Cincinnati, I., St. L. & C. Ry. Co. v. Geisel*, 21 N.E. 470, 470 (Ind. 1889) (same result where granting clause gave "the right of way for so much of said railroad, being eighty feet wide, as may pass through the following described piece, parcel, or lot of land"); *Indianapolis & V.R. Co. v. Reynolds*, 19 N.E. 141, 141 (Ind. 1888) (deed conveyed easement where granting clause gave "the right of way for so much of said railroad as may pass through the following described piece, parcel, or lot of land," but required parol evidence as to width of easement); *Cleveland, C., C. & I.R. Co. v. Coburn*, 91 Ind. 557, 560, 562 (Ind. 1883) (deed conveyed, at most, estate upon condition subsequent where granting clause gave "the right of way for so much of said railroad as may pass through the following described piece, parcel, or lot of land"); *Blakely v. Chi., K. & N.R. Co.*, 64 N.W. 972, 973 (Neb. 1895) (deed conveyed easement where granting clause gave strip of land "for right of way, and for operating [grantee's] railroad only"); *Reichenbach v. Wash. Short-Line Ry. Co.*, 38 P. 1126, 1126 (Wash. 1894) (same result where granting clause gave only "the right and privilege of surveying and laying out . . . through, over, across, and along the land . . . the route and site of [a] railroad" and only "so long as the same shall be used for the operation of a railroad"). Ameriton also cites a later case that fits into this class, *Rio Bravo Oil Co. v. Hunt Petroleum Corp.*, 455 S.W.2d 722 (Tex. 1970). *Rio Bravo Oil* is similarly distinguishable. *Id.* at 723, 726 (holding that deed conveyed only easement where granting clause conveyed "a right of way for the [railroad], over and across the following described tract of land").

26

under which one party would convey land to another at some future date, with a further limitation as to the use of that land.[7] Such cases have no relevance to Ameriton's claims; the 1879 deed is not a covenant to convey an interest in the property, but an actual conveyance.

The third class of cases identified in *Stevens* consisted of cases from other states in which a railroad sought to acquire a strip of land cutting through a larger estate, and the courts held that the deeds conveyed only easements. *Id.* But the *Stevens* court rejected the holdings of these cases, holding that Texas law does not limit railways to acquiring only easements in real property. *Id.* (citing *Calcasieu Lumber Co. v. Harris*, 13 S.W. 453 (Tex. 1890)). Rather, in Texas, "a railway company may condemn property, not only for right of way purposes, but for other necessary uses," and may also acquire fee title "as absolute as that of a private individual, at least [insofar] as concerns immunity from attack by [anyone] except the state." *Id.* This third class of cases thus does not control our decision.

Ameriton nonetheless asks us to interpret *Stevens* as holding that, when a deed is signed during a condemnation proceeding and the seller hopes to benefit from the presence of a railway, the deed conveys only a right of way. *Stevens*,

---

[7]     *See Uhl*, 41 S.E. at 340 (deed conveying easement and containing promise "to execute and acknowledge in due form of law, when required by said company, a deed conveying to said company in fee simple the land hereinbefore described"); *Lockwood*, 103 F. at 244 (same); *Hill*, 32 Vt. at 69 (agreement that grantor would, "on reasonable request, convey . . . such lands . . . as should be required for [the] railroad").

however, contains no such holding.  Rather, the Court merely discussed the categories of cases just described and distinguished them as irrelevant to the particular factual background of *Stevens*.  212 S.W. at 643.

The *Stevens* Court noted that a court seeking to determine the character of the estate granted by a deed will look both at the uses for the property designated in the conveyance and the relation of the grantor to those uses.  *Id.*  That is, the court asks whether the grantor obtains some special benefit, particular to herself and not potential assignees, from the conveyance.  *Id.*  But the Court went on to hold that it could only give the deeds before it "a meaning not fairly deducible from the language employed by the parties [if] the circumstances [were] such, in [the Court's] opinion, as to impel the conclusion that the parties intended other than their expressed language would ordinarily imply."  *Id.*  The deed before us is susceptible to interpretation without reference to external circumstances.  We therefore reject Ameriton's argument.

We hold that the 1879 deed unambiguously conveyed an undivided, fee simple interest in the property in question to G.H.S.A.  Union Pacific is G.H.S.A.'s successor in title, and the record does not defeat Union Pacific's title.  We therefore sustain Union Pacific's second issue and hold that the trial court improperly granted summary judgment for Ameriton.

## Whether the Trial Court Should Have Granted Union Pacific's Motion for Summary Judgment

Because the parties filed competing motions for summary judgment, we must consider the merits of both and render the judgment that the trial court should have rendered. *Jones*, 907 S.W.2d at 875. Union Pacific asks that we render judgment for it, because the 1879 deed conveyed a fee interest to G.H.S.A. and because Ameriton's only response to Union Pacific's motion for partial summary judgment was to rely on *Blakeney*. The record does not support this outcome.

In its response to Union Pacific's motion and in its brief to this Court, Ameriton argues that the 1879 deed contains a condition that G.H.S.A. was required to perform for the deed to vest, namely, building a railroad and running cars on it to the Texas & New Orleans Railroad Depot before January 1, 1881. Otherwise, the deed would be "null and void without further act of reconveyance." But, as Ameriton observed, there is no evidence in the record that G.H.S.A. met this condition. Rather, the only evidence was that Union Pacific "has removed its tracks from the Property" and "no longer users the Property for railroad purposes."

Union Pacific bore the burden to demonstrate that its predecessor in title built a railroad and ran cars on it to the Texas & New Orleans Railroad Depot before January 1, 1881. *See* TEX. R. CIV. P. 166a(c). Because it has not done so, it has not demonstrated that the fee title conveyed by the deed ever vested. Therefore, Union Pacific was not entitled to summary judgment. *Id.*

29

We sustain Union Pacific's fifth issue in part, in that we hold that Ameriton was not entitled to summary judgment. We otherwise overrule the issue, as the trial court properly denied Union Pacific's motion.

Because Ameriton was not entitled to summary judgment as to ownership of the property, it has not demonstrated that it is entitled to recover its attorney's fees. *Id.* We therefore overrule Union Pacific's sixth issue as moot.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.